Belowich & Walsh LLP
Attorneys for M.E.-R.E. Holding, LLC, Party-in-Interest
445 Hamilton Avenue, Suite 1102
White Plains, New York 10601
(914) 367-0081
Brian T. Belowich, Esq.
bbelowich@belowichwalsh.com
Daniel G. Walsh, Esq.
dwalsh@belowichwalsh.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
In re:

                                           Chapter 7

MICHAEL D. BARNETT,
DENISE A. BARNETT,                        Case No.: 12-37991(CGM)

                            Debtors.
-----------------------------------------------------------------X

**M.E.-R.E. HOLDING, LLC's OBJECTIONS TO NOTICE OF PRESENTMENT, DATED JUNE 11, 2013, FOR AN ORDER APPROVING AN AGREEMENT BETWEEN WALLKILL VALLEY FEDERAL SAVINGS AND LOAN ASSOCIATION AND MARK S. TULIS, CONCERNING TWO (2) PROMISSORY NOTES (the "GELLATLY NOTES")**

TO THE HONORABLE CECELIA G. MORRIS
CHIEF UNITED STATES BANKRUPTCY JUDGE:

      1.     M.E.-R.E. Holding, LLC ("Holding"), is a limited liability company with a direct, pecuniary interest in the relief requested by the Chapter 7 Trustee (the "Trustee") in his June 11, 2013 Notice of Presentment (the "Notice of Presentment").

      2.     Holding respectfully submits these Objections, together with the accompanying Declaration of Mark Fonte dated July 11, 2013 ("Fonte Dec.") and the exhibits annexed thereto, to the Trustee's application for an Order approving an agreement between Wallkill Valley Federal Savings and Loan Association ("Wallkill") and the Trustee concerning the "Gellatly Notes."

## Preliminary Statement

3.      The Notice of Presentment seeks an Order approving an agreement between the Trustee and Wallkill (hereinafter, the "Agreement"), wherein and whereby the Trustee purports to have entered into a "business arrangement" with Wallkill, a creditor, pursuant to which:

a. Wallkill would assign to the Trustee without recourse five (5) promissory notes made by Alexander Gellatly ("Gellatly") to Debtor Denise A. Barnett in the principal amounts of $712,500.00, $475,000.00, $450,000.00, $450,000.00 and $712,500.00 (the "Gellatly Notes"), each conditionally, collaterally assigned to Wallkill as security for a $500,000.00 commercial note given to Wallkill;[1] and

b. The Trustee would enforce the aforesaid notes against non-debtor Gellatly, at the expense of the Bankruptcy Estate; and

c. Upon recovery by the Trustee against the non-debtor Gellatly, Wallkill would be paid all sums allegedly due and owing to it, together with interest and reasonable attorneys' fees.

*See* Application of David L. Tillem, Esq. dated June 11, 2013 ("Tillem App."), Ex. A at pp. 4-7.

4.      The Trustee seeks approval an agreement by which the Trustee would enforce Wallkill's rights against a non-debtor, purportedly for the benefit of the Bankruptcy Estate or certain creditors.  This is not permitted by the Bankruptcy Code and constitutes a threshold objection requiring denial of the Trustee's application as a matter of law.

---

[1] The Trustee and Wallkill contend that there is a balance of $463,913.10 due on the $500,000 commercial note (*see* Tillem App., Ex. A at ¶ 4), but seek approval of an Agreement by which the Trustee would enforce the "Gellatly Notes," having an approximate value of $2.8 million (*see id.* at ¶ 6) against a non-debtor and at the expense of the Bankruptcy Estate.

5.      Even if the impropriety of the Agreement is somehow ignored, the Trustee's application is still inappropriate, and is at best premature, as it threatens to cut of Holding's rights pursuant to a written assignment of the Gellatly Notes, without the Trustee making the required showing or even so much as a hearing.

6.      Accordingly, and for the reasons set forth herein and in the accompanying Declaration of Mark Fonte, the Trustee's application should be denied in its entirety.

## Statement of Facts

7.      A complete recitation of the facts and circumstances supporting Holding's objections to the Trustee's application is set forth in the accompanying Declaration of Mark Fonte, which is fully incorporated by reference herein.

## The Agreement is Not Permitted Under the Bankruptcy Code

8.      The Trustee has purportedly accepted from Wallkill an assignment of certain notes given as collateral security for a commercial loan, and now seeks the court's approval of that Agreement to allow the Trustee to enforce Wallkill's rights against non-debtors, "to recover significant amounts of money for the estate," and "preserve Wallkill's security interest." *See* Tillem App., ¶ 18. The Trustee acknowledges that, under its proposed plan, Wallkill "may be paid earlier that other creditors of the Debtor." *See id.*

9.      By the Trustee's own characterization of the Agreement, the Agreement is not permitted under the Bankruptcy Code. Although the Trustee may assert the rights and interests of the Debtors or avoid certain transfers on behalf of creditors, the Trustee may not assert a creditor's (i.e., Wallkill's) claims against non-debtors for the supposed benefit of the Bankruptcy Estate or Wallkill. If the Trustee's application were granted, it would permit the Trustee to

enforce Wallkill's collateral rights against a non-debtor, purportedly for the benefit of the Bankruptcy Estate or certain creditors, namely, Wallkill.

10.     As a matter of well-settled law, the Trustee's proposed enforcement efforts are not permitted under the Bankruptcy Code.  *See In re Granite Partners, L.P.*, 194 B.R. 318 (Bankr. S.D.N.Y. 1996); *In re Agape World, Inc.*, 467 B.R. 556 (Bankr. E.D.N.Y. 2012).  As stated by this Court in *Granite Partners*:

> The trustee stands in the shoes of the debtor.  He may bring any suit that the debtor could have brought before the bankruptcy… Under section 544, the trustee also stands in the overshoes of the creditors… Section 544, however, does not extend beyond avoidance actions… and *does not permit the trustee to assert the personal, direct claims of creditors for the benefit of the estate or for a particular class of creditors*.

*Granite Partners*, 194 B.R. 324 (emphasis added).  *See also Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991) ("It is well settled that a bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt… itself").

11.     On the foregoing threshold basis alone, the Trustee's application should be denied.

**The Trustee's Assertions Concerning the Assignment of the Gellatly Notes to Holding are not a Basis for Granting the Trustee's Application, and at a Minimum Require a Hearing**

12.     The applicable Security Agreements by which Wallkill claims any right in the Gellatly Notes each provide that they only become effective upon a default under the Wallkill Note.  *See* Fonte Dec., Ex. C.  The Trustee has not demonstrated a default under the Wallkill Note and alleges in conclusory fashion that the assignment of the Gellatly Notes to Holding is "likely a fraudulent conveyance." *See* Tillem App., ¶ 13.

13.     The Trustee's "characterization" of the assignment to Holding of the Gellatly Notes (subject to the collateral assignment to Wallkill) as "fraudulent" is entirely insufficient to cut off Holding's rights thereunder, particularly without any substantiation or a hearing. *Cf.* 11 U.S.C. § 548; *In re Dreier LLP*, 452 B.R. 391 (Bankr. S.D.N.Y. 2011) (the trustee or party challenging a transfer has the burden of proof); *In re Jacobs*, 394 B.R. 646 (Bankr. E.D.N.Y. 2008) (same).

14.     Contrary to the Trustee's assertions, the assignment of the Gellatly Notes (subject to the collateral assignment to Wallkill) is not invalid merely by reason of the collateral assignment to Wallkill. N.Y. U.C.C. § 9-401 makes it clear that the debtor had an interest in the collateral (the Gellatley Notes) which is assignable even if the security agreement prohibits any transfer or makes a transfer an event of default. N.Y.U.C.C. § 9-401(b) provides in pertinent part that, "[a]n agreement between the debtor and secured party which prohibits a transfer of the debtor's rights in collateral or makes the transfer a default does not prevent the transfer from taking effect."

15.     Moreover, an attack by the Trustee as to the "sufficiency" of consideration given in connection with the assignment to Holding of the Gellatly Notes is completely irrelevant because, where (as here) an assignment is in writing and signed by the assignor, no consideration is necessary. *See* General Obligations Law § 5-1107 ("An assignment shall not be denied the effect of irrevocably transferring the assignor's rights because of the absence of consideration, is such assignment is in writing and signed by the assignor, or by his agent"); *Continental Oil Co. v. U.S.*, 326 F.Supp. 266, 269 (S.D.N.Y. 1971) (referring to GOL § 5-1107 "to sanction enforcement of written assignments regardless of consideration").

16.    Finally, it is unclear on this Record whether and when any rights attached to the notes given as collateral for the Wallkill Note, because the effectiveness of the corresponding Security Agreements were expressly made *contingent* upon a default under the Wallkill Note. N.Y.U.C.C. § 9-203(a) provides that, "[a] security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral, *unless an agreement expressly postpones the time of attachment.*" (emphasis added).   The Security Agreements between Wallkill and Management expressly provide that the Agreements did not even become effective until there was default under the Wallkill Note.   The Trustee has not demonstrated a default under the Wallkill Note, let alone when that alleged default was.   Therefore, it is unclear whether and when any rights accrued to Wallkill under the Security Agreements.

17.    For the foregoing reasons, and for the reasons set forth in the accompanying Declaration of Mark Fonte, the Trustee's application should be denied in its entirety.


Dated: White Plains, New York
       July 12, 2013

                                   Belowich & Walsh LLP


                                   By: /s/  Daniel G. Walsh
                                   Daniel G. Walsh (DW 7777)
                                   Brian T. Belowich (BB 6910)
                                   445 Hamilton Avenue, Suite 1102
                                   White Plains, New York 10601
                                   (914) 367-0081 (telephone)
                                   (914) 367-0084 (facsimile)
                                   Email: dwalsh@belowichwalsh.com

TO:    Wilson, Elser, Moskowitz, Edelman & Dicker LLP
       (By: David L. Tillem, Esq.)
       Attorneys for Mark S. Tulis, Chapter 7 Trustee
       3 Gannett Drive
       White Plains, New York 10604
       P: (914) 872-7104
       F: (914) 232-7001
       Email: david.tillem@wilsonelser.com

       Michael H. Schwartz & Associates, P.C.
       (By: Michael H. Schwartz, Esq.)
       Attorneys for Debtors
       One Water Street
       White Plains, New York 10601
       P: (914) 997-0071
       F: (914) 997-0536
       Email: Michael@NYLegalHelp.com

       Corbally, Gartland and Rappleya, LLP
       (By: William W. Frame, Esq.)
       Attorneys for Michael Conyea
       35 Market Street
       Poughkeepsie, New York 12601
       P: (845) 454-1110

       Iseman, Cunningham, Riester & Hyde, LLP
       (By: Penny M. Hahn, Esq.)
       Attorneys for UFP Atlantic Division, LLC
       2649 South Road, Suite 100
       Poughkeepsie, New York 12601
       P: (845) 473-8100
       F: (845) 473-8777
       Email: Phan@icrh.com

       Rusk Wadlin Heppner & Martuscello, LLP
       (By: Jason J. Kovacs, Esq.)
       Attorneys for Wallkill Valley Federal Savings and Loan
       255 Fair Street, PO Box 3356
       Kingston, New York 12402
       P: (845) 331-4100
       F: (845) 331-6930
       Email: jkovacs@rwhm.com