Belowich & Walsh LLP
Attorneys for M.E.-R.E. Holding, LLC, Party-in-Interest
445 Hamilton Avenue, Suite 1102
White Plains, New York 10601
(914) 367-0081
Brian T. Belowich, Esq.
bbelowich@belowichwalsh.com
Daniel G. Walsh, Esq.
dwalsh@belowichwalsh.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
In re:

MICHAEL D. BARNETT,
DENISE A. BARNETT,

                    Debtors.
------------------------------------------------------------------X

Chapter 7

Case No.: 12-37991(CGM)

**DECLARATION OF MARK FONTE IN SUPPORT OF M.E.-R.E. HOLDING, LLC's OBJECTIONS TO NOTICE OF PRESENTMENT, DATED JUNE 19, 2013, FOR AN ORDER APPROVING AN AGREEMENT BETWEEN WALLKILL VALLEY FEDERAL SAVINGS AND LOAN ASSOCIATION AND MARK S. TULIS, CONCERNING TWO (2) PROMISSORY NOTES (the "ORIGINAL JKS NOTES")**

MARK FONTE, hereby declares under penalties of perjury as follows:

1. I am managing member of M.E.-R.E. Holding, LLC ("Holding"), a limited liability company with a direct, pecuniary interest in the relief requested by the Chapter 7 Trustee (the "Trustee") in his June 19, 2013 Notice of Presentment (the "Notice of Presentment").

2. I respectfully submit this Declaration in support of Holding's objections to the Trustee's application for an Order approving an agreement between Wallkill Valley Federal Savings and Loan Association ("Wallkill") and the Trustee concerning the "Original JKS Notes."

3. I am fully familiar with the facts and circumstances set forth herein based upon my own personal knowledge.

## PRELIMINARY STATEMENT

4.  The Notice of Presentment seeks an Order approving an agreement between the Trustee and Wallkill (hereinafter, the "Agreement"), wherein and whereby the Trustee purports to have entered into a "business arrangement" with Wallkill, a creditor, pursuant to which:

   a. Wallkill would assign to the Trustee without recourse two (2) promissory notes collaterally assigned to Wallkill as security for a $500,000.00 commercial note given to Wallkill,[1] specifically, a $3,441,667.00 note (given by a non-debtor to a non-debtor) and a $1,358,962.00 note (given by a non-debtor to a non-debtor); and

   b. The Trustee would enforce the aforesaid notes against non-debtors, at the expense of the Bankruptcy Estate; and

   c. Upon recovery by the Trustee against the non-debtors, Wallkill would be paid all sums allegedly due and owing to it, together with interest and reasonable attorneys' fees.

*See* Application of David L. Tillem, Esq. dated June 19, 2013 ("Tillem Aff."), Ex. A at pp. 4-7.

5.  It does not appear under the Agreement that the Trustee proposes to enforce the rights or interests of either of the Debtors thereunder, but rather the claims of a creditor, Wallkill, against non-debtors, giving Wallkill preferential payment to boot.

6.  Simply put, the Trustee seeks approval of an Agreement by which the Trustee would enforce Wallkill's rights against non-debtors, purportedly for the benefit of the Bankruptcy Estate or certain creditors. This is a threshold objection requiring denial of the relief

---

[1] The Trustee and Wallkill contend that there is a balance of $463,913.10 due on the $500,000 commercial note (*see* Tillem App., Ex. A at ¶ 4), but seek approval of an Agreement by which the Trustee would enforce the "Original JKS Notes," having an approximate value of more than $4.8 million (*see id.* at ¶ 6), against non-debtors and at the expense of the Bankruptcy Estate.

2

the Trustee seeks as a matter of law. The Trustee is not permitted to engage in such a collection effort; although the Trustee may assert the rights and interests of the Debtors or avoid certain transfers on behalf of creditors, the Trustee may not assert Wallkill's claims against non-debtors for the supposed benefit of the Bankruptcy Estate or Wallkill. The "business arrangement" proposed by the Trustee is not permissible under the Bankruptcy Code. The Trustee's application must therefore be denied.

7. Moreover, even if the foregoing threshold basis for denial is somehow ignored, the Trustee's application is at best premature and inappropriate at this juncture. The Trustee presumes without establishing that Wallkill has a right to enforce on the notes given as collateral security. Because the applicable security agreements were expressly *conditional* and did not take effect until such time as a default occurred on Wallkill's underlying loan (which the Trustee has not established), the Trustee has not demonstrated that any right to enforcement on the notes given as collateral security has accrued.

8. Moreover, the Trustee's application ignores (and threatens to cut off) the rights of Holding, which took a valid assignment of the right to collect on one of the notes given as collateral security to Wallkill for good and valuable consideration.

9. Accordingly, and for the reasons set forth herein and in the accompanying objections, the Trustee's application should be denied in its entirety.

## BACKGROUND FACTS

### The Purchase Agreement and April 2011 Notes

10. On April 13, 2011, JKS Newburgh, LLC ("JKS") entered into an agreement with Debtor Denise A. Barnett, John O'Donnell ("O'Donnell") and ME Development Group, LLC ("Development"), wherein and whereby JKS agreed to purchase a 67.1% majority interest in DJ

Orchard LLC ("DJ Orchard") for $8,000,000.00 (the "Purchase Agreement"). I signed the Purchase Agreement as a member of Development. A true and correct copy of the Purchase Agreement is annexed hereto as Exhibit A.

11. At or about the time of the Purchase Agreement, DJ Orchard owned certain real property located in Newburgh, New York and a 90% membership interest in Orchard Hills of Newburgh, LLC, a limited liability company which owned certain real property located at Route 9W and Oak Street in Newburgh, New York. *See* Exhibit A, p. 1. The parties to the Purchase Agreement acknowledged and agreed that, at or about the time of the Purchase Agreement, Debtor Denise A. Barnett, O'Donnell and Development collectively owned a 61.70% membership interest in DJ Orchard. *See id.*

12. In connection with JKS' purchase of a 67.1% majority interest in DJ Orchard in accordance with the Purchase Agreement, JKS executed three promissory notes: (1) a $3,441,567.00 note to M.E. - R.E. Management Group, LLC ("Management"), in which Debtor Denise A. Barnett had a membership interest, in exchange for a 18.4% interest in DJ Orchard;[2] (2) a $2,691,667.00 note to O'Donnell in exchange for a 21.65% interest in DJ Orchard;[3] and (3) $1,866,666.00 note to Holding in exchange for another 21.65% interest in DJ Orchard.[4] *See* Exhibit A, p. 2.

13. In addition to the foregoing, on or about April 13, 2011, JKS Highland LLC ("JKS Highland"), executed a promissory note in favor of Management in the principal amount of $1,358,962.00. A true and correct copy of the $1,358,962.00 note is annexed hereto as Exhibit E.

---

[2] A true and correct copy of the $3,441,567.00 note is annexed hereto as Exhibit B.

[3] A true and correct copy of the $2,691,667.00 note is annexed hereto as Exhibit C.

[4] A true and correct copy of the $1,866,666.00 note is annexed hereto as Exhibit D.

4

**The Security Agreements and Wallkill Note**

14. The Trustee asserts that, on or about May 18, 2011, Management and the Debtors executed a $500,000.00 commercial note in favor of Wallkill (hereinafter, the "Wallkill Note"). A true and correct copy of the Wallkill Note is annexed hereto as Exhibit F.

15. The Wallkill Note provides, in pertinent part that the underlying $500,000.00 loan was secured by certain "security agreements and assignments of Promissory Notes and a security agreement and pledge of 100% membership interests in [Management]."[5] Exhibit F, p. 1. The Trustee submits copies of certain security agreements in support of his application. *See* Tillem App, Exs. C and E. Specifically, the Trustee submits:

   a. A Security Agreement (Assignment of Promissory Note), dated May 18, 2011, by and between Management and Wallkill, pursuant to which Management assigned to Wallkill as security the $3,441,667.00 note made by JKS to Management (the "Management Security Agreement");[6]

   b. A Security Agreement (Assignment of Promissory Note), dated May 18, 2011, by and between Management and Wallkill, pursuant to which Management assigned to Wallkill as security the $1,358,962.00 note made by

---

[5] In addition to the foregoing, in connection with the Wallkill Note, the Trustee asserts that Debtor Denise A. Barnett entered into a series of Security Agreements with Wallkill, dated May 18, 2011, pursuant to which: (1) Debtor Denise A. Barnett assigned to Wallkill her interest in and to the certain notes known as the "Gellatly Notes" totaling $1,953,794.00; and (2) Denise Barnett pledged as a security interest for the $500,000.00 loan her entire 100% membership interest in Management. The Gellatly Notes are the subject of another application filed by the Trustee seeking similar relief. Holding is serving and filing separate objections to the Notice of Presentment pertaining to the Gellatly Notes contemporaneously herewith.

[6] A true and correct copy of the Management Security Agreement is annexed hereto as Exhibit G.

5

>JKS Highland to Management (the "Second Management Security Agreement");[7] and

>c. A Security Agreement (Assignment of Promissory Note), dated May 18, 2011, by and between Debtor Denise A. Barnett and Wallkill, pursuant to which Debtor Denise A. Barnett assigned to Wallkill her entire 100% membership interest in Management (the "Barnett Security Agreement").[8]

16. Importantly, both the Management Security Agreement and the Second Management Security Agreement each state, on their respective faces, that they are *conditional*. Both agreements expressly and unambiguously provide, in pertinent part, as follows:

*Condition Precedent*

This Assignment shall only become effective if there is a default by the Assignor [Management] in the terms of the Wallkill Note dated May 18, 2011, or extensions and renewals thereof, held by the Bank [Wallkill].

Exs. G and H at ¶ 1 (emphasis in original).

17. By reason of the foregoing, neither the Management Security Agreement nor the Second Management Security Agreement become effective unless or until Management defaulted under the terms of the Wallkill Note.

18. The Trustee has not submitted any admissible proof of a default by Management under the Wallkill Note. Rather, with respect to the Management Security Agreement, the Trustee appears to assert that an alleged event of default has occurred by reason of the amendment of the $3,441,667.00 note made by JKS to Management and subsequent assignment of the right to collect thereon to Holding for good and valuable valuable consideration. However, as set forth herein, the plain terms of the Management Security Agreement and

---

[7] A true and correct copy of the Second Management Security Agreement is annexed hereto as Exhibit H.

[8] A true and correct copy of the Barnett Security Agreement is annexed hereto as Exhibit I.

6

documentary evidence contradict the Trustee's claims. With respect to the Second Management Security Agreement, the Trustee appears to assert that an alleged event of default has occurred by reason of a supposed "cancellation" of the $1,358,962.00 note made by JKS Highland to Management. The Trustee has not produced any proof of the "cancellation" of the $1,358,962.00 note. That is because no such proof exists (*see* FN 9, *infra*).

19. Pursuant to the terms of the Management Security Agreement and the Second Management Security Agreement, modification, extension or alteration the terms of the $3,441,667.00 and $1,358,962.00 notes made by JKS and JKS Highland to Management was permitted, as long as such modification, extension or alteration did not adversely affect Wallkill's $500,000.00 interest in the notes. *See* Exhibits G and H, ¶ 2(A). Indeed, both the Management Security Agreement and the Second Management Security Agreement clearly provide that Management will "not to modify, extend or alter the terms of said Assigned Note *in such a way was to adversely affect the security interest of the Bank*, unless the Bank has approved the amendment or modification in writing..." *Id.* (emphasis added).

20. As security for the $500,000.00 Wallkill Note, Wallkill was collaterally assigned promissory notes in the aggregate, principal amount of $6,754,423.00; more than thirteen and one half (13 ½) times the principal amount of the Wallkill Note. *See* Exs. G and H and FN 5, *supra*. This figure does not include the value of Debtor Denise Barnett's membership interest in Management collaterally assigned pursuant to the Barnett Security Agreement. *See* Ex. I.

21. The Trustee has not submitted evidence that Wallkill's $500,000.00 security interest has been affected or jeopardized in any way. Perhaps that is because the Trustee cannot plausibly support such a claim. The Trustee readily admits in support of his application that the

total amount due and owing on the $3,441,667.00 and $1,358,962.00 notes alone "far exceeds the amount due and owing to Wallkill" on the $500,000 Wallkill Note. *See* Tillem App., ¶ 14.

22. By reason of the foregoing, Wallkill's security interest under the Security Agreements referenced herein has not been (and could not have been) adversely affected by a subsequent amendment, modification, or assignment of the right to collect on the $3,441,667.00 note, or even the alleged – though unsupported – "cancellation" of the $1,358,962.00 note.

**The Second Purchase Agreement and July 2011 Note**

23. In or about June of 2011, a dispute arose between the managing member of JKS and JKS Highland, John Scanlan ("Scanlan"), and the Debtors concerning JKS's ownership interest in DJ Orchard in association with the Purchase Agreement. Ultimately, that dispute was settled, resulting in JKS entering into a new agreement for the purchase a 67.1% majority interest in DJ Orchard, dated July 11, 2011 (the "Second Purchase Agreement"). A true and correct copy of the Second Purchase Agreement is annexed as Exhibit J.

24. On or about July 11, 2011, in connection with the Second Purchase Agreement, JKS executed an Amended and Restated Promissory Note (the "Amended Note") in favor of Management in the principal amount of $3,441,667.00, thereby amending the earlier $3,441,667.00 note made by JKS to Management. A true and correct copy of the Amended Note is annexed hereto as Exhibit K.

25. Importantly, the principal amount of the $3,441,667.00 note remained unchanged, as did the identity of the lender and borrower. *See* Ex. K. The Amended Note modified the accrual of interest on the loan and terms of payment, but did *not* adversely affect Wallkill's security interest under the Management Security Agreement.

26.  Also on or about July 11, 2011, in connection with the Second Purchase Agreement, Scanlan executed a Guaranty (the "Guaranty"), personally guarantying the obligations of JKS under the Amended Note. A true and correct copy of the Guaranty is annexed hereto as Exhibit L.

27.  In connection with the Second Purchase Agreement, the $1,866,666.00 note previously given by JKS to Holding in exchange for a 21.65% interest in DJ Orchard pursuant to the Purchase Agreement (Ex. D hereto) was cancelled.[9] The reason that the $1,866,666.00 note was cancelled is because the note was exchanged for the $3,441,667.00 note. To that end, on or about July 11, 2011, Development and Holding executed a General Release, acknowledging that the $1,866,666.00 note "is null, void and of no further force and effect." I signed the General Release as a member of Development and Holding. A true and correct copy of the General Release is annexed hereto as Exhibit M.

28.  The General Release states, in pertinent part, that the $1,866,666.00 note "is null, void and of no further force [or] effect" and that the original note "shall be marked 'cancelled' and returned to JKS…" *See* Ex. M at p. 3. On or about July 11, 2011, the original $1,866,666.00 note was marked "VOID – PAID" and was returned to JKS. A true and correct copy of the $1,866,666.00 note so marked is annexed hereto as Exhibit N.

29.  The Trustee has not established how the Amended Note or the attendant aspects of the Second Purchase Agreement adversely affected Wallkill's $500,000.00 security interest. The evidence before the Court indicates Wallkill's security interest was not adversely affected.

---

[9] The Trustee asserts in support of his application that the $1,358,962 note from JKS Highland to Management was "cancelled." *See* Tillem App., ¶ 11. This assertion is incorrect. The only note that was cancelled was the $1,866.666.00 note from JKS to Holding referenced above, which was given by JKS to Holding in exchange for a 21.65% interest in DJ Orchard.

9

**The Assignment**

30. Attendant to the Second Purchase Agreement, on or about July 11, 2011, Management and Holding executed a document entitled Assignment of Right to Collect Payment under Amended and Restated Promissory Note (the "Assignment Agreement"), pursuant to which Management assigned to Holding its right to collect payment under the Amended Note.[10] A true and correct copy of the Assignment Agreement is annexed as Exhibit O.

31. The Trustee alleges in conclusory fashion, and without any supporting evidence whatsoever, that the assignment of Management's right to collect payment under the Amended Note "appears to be a fraudulent conveyance." *See* Tillem App., ¶ 14. I affirmatively state under penalty of perjury that the assignment of Management's right to collect payment under Amended Note was *not* in any way fraudulent. Indeed, the Assignment Agreement expressly provides that the right to collect payment under the Amended Note was given "in consideration for an immediate payment of $200,000.00, the assignment of shares of Vineyard Commons, LLC; the assignment of shares in Wappingers Gardens, LLC; and for the value of management and consulting services previously rendered." *See* Ex. O, p. 1.

32. The Trustee also fails to recognize that the amendment or modification of the original $3,441,667.00 note was permitted by the Management Security Agreement (*see* Ex. G, p ¶ 2(A)) and that, pursuant to the Management Security Agreement, Management retained the right to collect payments due on the collaterally assigned note, and to "retain, use and enjoy the same" in any event. *See* Ex. G, ¶ 3.

---

[10] Holding has since commenced an action in New York State Court to collect from JKS on the Amended Note and from Scanlon on the Guaranty. The aforedescribed action is entitled *M.E.-R.E. Holding, LLC v. JKS Newburgh, LLC and John Scanlan*, (Westchester County Index No. 566883/12) (the "State Action"). A true and correct copy of a Summons and Motion for Summary Judgment in Lieu of Complaint filed at the commencement of the State Action is annexed hereto as Exhibit P.

### THE TRUSTEE'S PROPOSED AGREEMENT WITH WALLKILL, IF APPROVED BY THE COURT, WILL PREJUDICE HOLDING

33. The Trustee claims that the relief it requests will not prejudice any party. That claim is clearly misleading.

34. Aside from requiring the Trustee to undertake an *ultra vires* and improper role in these proceedings, the proposed agreement between the Trustee and Wallkill disregards Holdings' rights vis-à-vis the Amended Note and the Assignment Agreement based entirely upon Wallkill's unsubstantiated "contention," contrary to the terms of the applicable Security Agreements, that the Amended Note and the Assignment Agreement were somehow invalid (of course they were not). *See* Tillem App., Ex. A, p. 3.

35. The Trustee's application would also undermine Holding's enforcement efforts in the State Action (*see* FN 10, *supra*), and risk inconsistent determinations from separate courts.

36. It is respectfully submitted that not only is it inappropriate for the Trustee to agree to take an assignment of whatever rights Wallkill may have under the Wallkill Note or the corresponding Security Agreements, but for the Trustee to seek *de facto* determinations – merely by virtue of an agreement between Wallkill and the Trustee and without a hearing – that he has a "perfected security interest," or a "first position, secured interest" in the notes at issue, or of any priority of payments as set forth in his Notice of Presentment and proposed Order is simply incredible and improper.

37. By reason of the foregoing, it is respectfully submitted that the Trustee's application should be denied in its entirety, and a minimum, a hearing must be had so as to determine the propriety of the relief sought by the Trustee and to ensure Holdings' interests are protected.

WHEREFORE, Party-in-Interest M.E.-R.E. Holding, LLC respectfully requests that the relief sought by the Chapter 7 Trustee in his June 19, 2013 Notice of Presentment pertaining to the "Original JKS Notes" be denied in its entirety.

I HEREBY DECLARE PURSUANT TO 28 U.S.C. § 1746, UNDER THE LAWS OF THE UNITED STATES OF AMERICA AND THE STATE OF NEW YORK, AND UNDER PENALTY OF PERJURY, THAT THE FOREGOING IS TRUE AND CORRECT.

Dated: July 11, 2013
       White Plains, New York

_____
MARK FONTE, Managing Member of
Party-in-Interest M.E.-R.E. Holding, LLC

12