Wilson, Elser, Moskowitz, Edelman & Dicker LLP
Attorneys for Chapter 7 Trustee, Mark S. Tulis
3 Gannett Drive
White Plains, New York 10604-3407
Tel. 914-872-7104
David L. Tillem, Esq.
david.tillem@wilsonelser.com
Kristen D. Romano, Esq.
kristen.romano@wilsonelser.com
File No.: 07703.00021

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:                                                     :   Chapter 7
                                                           :
MICHAEL D. BARNETT and                                     :   Case No. 12-37991 (CGM)
DENISE A. BARNETT,                                         :
                                                           :
                           Debtors.                        :
-----------------------------------------------------------x

APPLICATION OF TRUSTEE FOR AN ORDER APPROVING AN AGREEMENT
BETWEEN WALLKILL VALLEY FEDERAL SAVINGS AND LOAN
ASSOCIATION AND TRUSTEE MARK S. TULIS CONCERNING FIVE (5)
PROMISSORY NOTES (the "GELLATLY NOTES")

TO:   THE HONORABLE CECELIA G. MORRIS
      CHIEF UNITED STATES BANKRUPTCY JUDGE:

Mark S. Tulis, the chapter 7 trustee (the "Trustee") of the estates of the debtors Michael D. Barnett and Denise A. Barnett, submits this application (the "Application") seeking approval of an agreement the Trustee seeks to enter into with Wallkill Valley Federal Savings and Loan Association ("Wallkill") pertaining to certain promissory notes made payable to Denise A. Barnett (only) held by Wallkill as security for a commercial loan made by Wallkill to Denise A. Barnett (the "Debtor"), Michael D. Barnett and ME-

1

4595597.1

RE Management Group, LLC ("Management Group"), and respectfully represents as follows:

1. On November 30, 2012, the debtors Michael D. Barnett and Denise A. Barnett (hereinafter, collectively the "Barnetts") filed a joint voluntary petition for relief under chapter 7 of the Bankruptcy Code.

2. On November 30, 2012, Mark S. Tulis, Esq., was appointed chapter 7 trustee under section 701 of the Bankruptcy Code and he has qualified as same.

### RELIEF REQUESTED

3. This Application pertains primarily to the debtor Denise A. Barnett only.

4. The Trustee seeks entry of an order pursuant to Bankruptcy Code §§ 105(a) and 542(a), and Bankruptcy Rules 9019 and 9013, approving an agreement between Wallkill Valley Federal Savings and Loan Association ("Wallkill") and the Trustee, whereby (i) Wallkill will deliver and assign five original promissory notes in its possession (the "Gellatly Notes"), along with certain related documents, i.e. five security agreements between the Debtor and Wallkill and five estoppel certificates issued by Alexander Gellatly ("Gellatly") to Denise A. Barnett, which Gellatly Notes were delivered by the Debtor to Wallkill to secure a Commercial Note; (ii) to permit the Trustee to enforce and collect on the Gellatly Notes; (iii) upon recovery to remit the Amount Due to Wallkill under the Commercial Note, without further order of this Court; and (iv) for the Trustee to retain for the benefit of the estate of the Debtor any amount recovered over and above the Amount Due to Wallkill (collectively, the "Requested Relief").

2

4595597.1

5. The proposed agreement referred to is attached as Exhibit A to this Application. The Agreement is specifically not identified as a "Settlement Agreement" because the Trustee is not acting adversely to the interests of Wallkill. This Agreement represents what is, in practical effect, a consensual legal and business arrangement between Wallkill and the Trustee which will permit Wallkill to recover what it is owed, but will also permit the Trustee to more readily protect the interests of the estate and to more quickly act to recover the amounts due on the Gellatly Notes, unencumbered by the perfected security interest of Wallkill.

## BACKGROUND FACTS

6. In a series of transactions entered into before the bankruptcy filing, the Debtor sold various interests she maintained directly, or indirectly through limited liability companies that she owned, managed and controlled, in certain limited liability companies and real estate to Alexander Gellatly. In consideration of those transactions, Gellatly issued to Denise Barnett only, five promissory notes (the "Gellatly Notes") dated as of September 17, 2010, with an aggregate face value of $2,800,000.00. A copy of each of the Gellatly Notes is attached as a part of Exhibit "B."

7. The Gellatly Notes are in the amounts, and may be described by the membership interests related thereto, as follows:

| Amount | Description |
| --- | --- |
| $712,500.00 | 299 Retail Center |
| $475,000.00 | DJ Orchard, LLC |
| $450,000.00 | Wappinger Gardens, LLC |
| $450,000.00 | Vineyard Commons Holding, LLC |
| $712,500.00 | Highland Square Development, LLC |

3

4595597.1

8.  Based upon documents provided to the Trustee and testimony at Rule 2004 hearings, there is at least approximately $1,953,794.00 plus interest currently due on the Gellatly Notes.

9.  On or about May 18, 2011, the Barnetts and Management Group entered into a Commercial Note with Wallkill with a face amount of $500,000.00. A copy of the Commercial Note is attached as Exhibit "C."

10. As part of the transaction pertaining to the Commercial Note, Wallkill was granted a security interest in the Gellatly Notes. The Debtor delivered the original Gellatly Notes to Wallkill, which remains in possession of the original Gellatly Notes. The Debtor also entered into five (5) security agreements, one for each Gellatly Note (the "Security Agreements"), whereby Wallkill was granted a security interest in each of the Gellatly Notes. A copy of each of the Security Agreements is attached as Exhibit "D."

11. Further, in a series of estoppel certificates executed by Gellatly and sworn to May 16, 2011 (the Estoppel Certificates"), Gellatly covenanted not only to Denise A. Barnett, but to any holder of the [Gellatly] Note, among other things, the validity of the Gellatly Note "and that there are no defenses or offsets to said ... Note." The Estoppel Certificates were prepared by Wallkill's attorneys (see bottom of each page) for the benefit of Wallkill, or its assignees. A copy of each of the five Estoppel Certificates is attached as "Exhibit E."

12. Thereafter, in a document sworn to May 27, 2011, Gellatly executed yet another estoppel certificate (the "Estoppel Cert.") for the benefit of Denise Barnett whereby Gellatly explicitly certified that he had no defenses or offsets to the five promissory notes and the estoppel certificate was "for the benefit of the Holder of the

Notes, but[r] (sic) for the benefit of any subsequent holder of the Notes or any of them." A copy of the Estoppel Cert is attached as Exhibit "F." Pursuant to the Estoppel Cert, Gellatly owed $2,253,794.00 (plus interest) on the Gellatly Notes.

13.   Parenthetically, a month after Denise A. Barnett entered into the transaction with Wallkill, she entered into a transaction with ME-RE Holding, LLC ("Holding") (not to be confused with Management) whereby the Debtor purportedly assigned the Gellatly Notes to Holding in consideration for certain management services rendered to various business entities of the Barnetts, i.e. a likely fraudulent conveyance. A copy of the Agreement to Assign Promissory Note and the Assignment of the Promissory Note from Denise Barnett (the assignor) to Holding (the assignee) is attached as Exhibit "G." Holding never received the original Gellatly Notes. They were (and are) in the possession of Wallkill. Holding is not perfected in the Gellatly Notes. It is utterly unclear what interest, if any, Holding holds in the Gellatly Notes. This transaction appears to be a fraudulent conveyance subject to avoidance by the Trustee, an issue that will be addressed at a later date, once this part of the puzzle is completed. In any case, pursuant to the language of the "Assignment of Promissory Note" the total due on the Gellatly Notes was $1,953,794.00.

14.   The Trustee has reviewed the documentation and law pertaining to these Gellatly Notes and the legal position of Wallkill. Wallkill states, and the Trustee accepts as true, that as of April 24, 2013, there is $463,913.10 due and owing on the Commercial Note. Further, Wallkill contends, and the Trustee does not gainsay Wallkill's assertion, that it is fully and properly perfected in the Gellatly Notes. Wallkill has custody and possession of the original Gellatly Notes. Clearly, however, the amount due and owing

5

4595597.1

under the Gellatly Notes far exceeds the amount due and owing to Wallkill. The Gellatly Notes matured, by their own terms, on May 15, 2013. Thus, the remaining balance is due.

## RELIEF REQUESTED

15.  As set forth, the transaction between the Trustee and Wallkill is consensual. Nevertheless, due the nature of the related relief, Court approval is required.

16.  The Requested Relief is technically merely seeking permission of the Court and approval to enter into the Agreement with Wallkill. But the Wallkill Agreement implicates several bankruptcy related issues. First and foremost, as part of the consideration for this Agreement, the Trustee has acknowledged the debt owed Wallkill under the Commercial Note and has agreed to promptly pay the bank upon the Trustee's recovery of sufficient amounts under the Gellatly Notes. No additional Court approval needs to be sought to make this payment. Wallkill has agreed to deliver the original Gellatly Notes, the original Security Agreements and the original Estoppel Certificates to the Trustee, or his counsel. As no adversary proceeding or contested matter was commenced against Wallkill, and because the Trustee will seek to avoid the purported subsequent assignment of the Gellatly Notes to Holding, the Trustee believes it is prudent and necessary to preserve Wallkill's security interest for the benefit of the estate. Section 551 arguably does not apply here automatically as there is no underlying proceeding against the bank. Consequently, the Trustee seeks, by the language of the Agreement, to have Wallkill assign its security interest to the Trustee. Further, if the

Trustee is assigned these interests, the rights under the Estoppel Certificates should also flow to the Trustee.

18.    Approval of this Agreement will facilitate the Trustee's efforts to recover significant amounts of money for the estate. It will cement the Trustee's status as a secured creditor and preserve Wallkill's security interest for the benefit of all creditors. No party is prejudiced. And although Wallkill may be paid earlier than other creditors of the Debtor, Wallkill has the right, at this time, to pursue Gellatly directly. Thus, in either event, Wallkill has the means to be paid before anyone else involved in this case. Moreover, Holding has asserted some rights in the Gellatly Notes. It is the Trustee's expectation that upon approval of the Agreement, he will move to avoid the assignment to Holding under both §544 and §548 and under the provisions of the *New York Debtor and Creditor Law* §§270 et seq., as may be applicable. Possession and assignment of the original Gellatly Notes, Security Agreements and Estoppel Certificates, in conjunction with an explicit agreement with the secured creditor Wallkill, will facilitate the Trustee's legal efforts and eliminate a potential litigation between the estate and Wallkill.

WHEREFORE, the Trustee respectfully requests that the Court approve the Agreement between the Trustee and Wallkill, inclusive of the related relief, and together with such other and further relief as the Court deems just and proper.

4595597.1

Dated: June 11, 2013
      White Plains, New York

                              Wilson Elser Moskowitz Edelman & Dicker LLP
                              Attorneys for Mark S. Tulis, Trustee

By: _____
                David L. Tillem

TO: All parties on attached service list

8
4595597.1